**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

WALDO J. SANTIAGO-COLBERG;
GABRIEL A. SANTIAGO-COLBERG,

     **Plaintiff,**

          **v.**                     **Civil No.** 22-1547 (FAB)

DR. ANTONIO BUSQUETS, *et al.*,

     **Defendants.**

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court is plaintiffs Waldo J. Santiago-Colberg ("Waldo") and Gabriel A. Santiago-Colberg ("Gabriel") (collectively "plaintiffs")'s objections to Magistrate Judge Bruce J. McGiverin (the "magistrate judge")'s Report and Recommendation ("R&R"). (Docket No. 51.) The magistrate judge recommended that the motion for summary judgment filed by defendants Dr. Antonio Busquets, Conjugal Partnership Busquets-Doe, Busquets Plastic Surgery, PSC, Medical Protective Company and Jane Doe (collectively "defendants") (Docket No. 34) be granted because there is no diversity jurisdiction. (Docket No. 46.) For the following reasons, the Court **ADOPTS** the R&R (Docket No. 46), and **GRANTS** defendants' motion for summary judgment. (Docket No. 34.)

## I.  Background[1]

Plaintiffs Waldo and Gabriel are the adult children of Mirely Colberg Lugo.  The plaintiffs' mother underwent plastic surgery for replacement and adjustment of breast implants, and an inner thigh lift which was conducted by the defendants.  (Docket No. 4 at p. 6.)  The plaintiffs allege that due to the defendants' negligence, their mother suffered permanent injuries including significant scaring on her legs.  Id.

Gabriel is a medical student from Cabo Rojo, Puerto Rico. (Docket No. 38 Ex. 1 at p. 17.)  In 2018, Gabriel began medical school at the University of Medicine and Health Sciences in St. Kitts and moved away from Puerto Rico for the first time.  Id. at 16-17.  After living in St. Kitts for two years, Gabriel began medical rotations in different locations.  Medical rotations are a part of his schooling because of which Gabriel travels to different hospitals to gain work experience.  Id. Gabriel's school determines where he will travel on rotation and for how long he will remain there.  Id. at 11.  At the time of the filing of the complaint, Gabriel was on rotation at Weiss Memorial Hospital in Chicago and was living at 1020 W. Lawrence Avenue, Chicago,

---

[1] The facts are taken from the parties' Local Rule 56 submissions and presented in the light most favorable to the nonmoving party.  See Jones v. Scotti, 493 F. App'x 139, 141 (1st Cir. 2012) (discussing the summary judgement standard of review.)

Illinois, 60640.  Id. at 16-17.  In November 2022, Gabriel then moved again, this time to Miami, Florida where he participated in a medical rotation at Keralty Hospital until February 2023.  Id. at 16.  From there, in February 2023, Gabriel was assigned to perform a medical rotation at Piedmont Hospital in Augusta, Georgia, and on October 10, 2023, the day of his deposition, Gabriel was starting a four-week medical rotation in Puerto Rico. Id. at 12-14.  He does not know where he will be going after he completes his medical rotation in Puerto Rico, because the school decides where to send him.  Id. at 11-12.  Gabriel has never worked in St. Kitts, Chicago, Miami, or Atlanta.  Id. at 20.  At the time of the deposition, he was applying to do an internal medicine residency after finishing his assigned rotations, but he did not know where he would be accepted.  Id. at 21.

Gabriel was not able to be with his mother after her surgery due to school, work, and rotations.  Id. at 32.  Gabriel and his mother remain close and video-call each other several times a week. Id. at 40-41.  She would sometimes show him her scars during these video calls.  Id. at 40.  Gabriel found these scars disturbing and difficult to look at; in his deposition he testified that he thought she looks like Frankenstein.  Id. at 37.  Gabriel comes to Puerto Rico at Christmas and for two weeks every three to four months.  Id. at 29.  When he would return to Puerto Rico, he would

try to go bicycle riding with his mother, but she did not want to. Id. at 36.  It is heartbreaking for Gabriel not to be in Puerto Rico for his mother and hearing her tell him she would not be able to do the things she loved to do previously.  Id. at 45.  He is saddened that when he asks her to go out, go for a bike ride, or eat out at a restaurant, she does not want to go because she does not feel like herself.  Id.  Gabriel has not seen a psychologist or psychiatrist to deal with his mental anguish over his mother's condition.  Id. at 44.

Waldo has been living in Opelika, Alabama since June 2017. See Docket No. 38-2 at 12.  He resides at 1650 South Fox Run Parkway, Apartment 337, Opelika, Alabama 36801.  Id. at 8-9.  He is doing a residency at East Alabama Health in internal medicine. Id. at 10-11.  He comes to Puerto Rico two to three times a year. Id. at 13.  He did not come to Puerto Rico when his mother had the surgery in November 2021, but he did visit her in January 2022. Id. at 21.  Waldo expressed frustration because his mother has tried to hurt herself on multiple occasions, and because he has been unable to be there for her.  Id. at 29-30.  It is difficult for Waldo to see his mother not enjoy life as she did before her surgery.  Id.  Like Gabriel, Waldo has not received any psychological or psychiatric treatment regarding his mental anguish over his mother's condition.  Id. at 13, 28.

## II.  Legal Standard

A district court may refer a pending motion to a magistrate judge for a R&R.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(a); Loc. Rule 72(b).  Any party adversely affected by the R&R may file written objections within fourteen days of being served with the magistrate judge's report.  Loc. Rule 72(d).  See 28 U.S.C. § 636(b)(1).  A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made."  Ramos-Echevarría v. Pichis, Inc., 698 F.Supp. 2d 262, 264 (D.P.R. 2010); Sylva v. Culebra Dive Shop, 389 F.Supp. 2d 189, 191-92 (D.P.R. 2005) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)).

Failure to comply with this rule precludes further review. See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Borden v. Secretary of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987).  In conducting its review, a court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636 (a)(b)(1); Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985); Álamo Rodríguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003).  Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object.

Civil No. 22-1547 (FAB)                                                    6

See Hernández-Mejías v. General Elec., 428 F.Supp.2d 4, 6 (D.P.R.

2005) (citing Lacedra v. Donald W. Wyatt Detention Facility, 334

F.Supp. 2d 114, 125-126 (D.R.I. 2004)).

**III. Discussion**

Plaintiffs make two specific objections to the magistrate
judge's recommendations.  They argue that (1) the magistrate
judge's finding that there was not complete diversity as to Gabriel
and Waldo was clearly erroneous, and (2) that the jurisdictional
amount is satisfied by both plaintiffs.  (Docket No. 51.)

**A.    Diversity of the Parties**

The magistrate judge recommended that the defendants'
motion for summary judgment be granted, in part because Gabriel
was domiciled in Puerto Rico and therefore complete diversity among
the parties is lacking.  (Docket No. 46 at p. 6.)  In support of
their argument that this finding was clearly erroneous, the
plaintiffs cite to "Gabriel's intent to remain in Chicago . . .,
evidenced by the fact that he signed a one-year lease for an
apartment; paid for utilities used at his rented apartment; and
also was required to have an insurance policy to cover the
apartment and his belongings."  (Docket No. 51 at p. 5.)

Pursuant to 28 U.S.C. §1332(a)(1), the Court has
original jurisdiction over all civil cases between citizens of
different states ("diversity jurisdiction").  23 U.S.C.

§1332(a)(1); see also Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 673 (1st Cir. 1994). Diversity jurisdiction requires complete diversity of citizenship between all plaintiffs and all defendants. Id. For purposes of diversity jurisdiction, a party's citizenship is equal to their domicile, which is composed of two elements: (1) their presence in the alleged state of domicile, and (2) an intent to remain there. Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992); see also 13E Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §3613 (3d ed. 2024) ("Wright & Miller").

It is undisputed that Gabriel was physically present in Chicago when the complaint was filed. (Docket No. 54 at p. 3.) Therefore, the question before the Court is whether Gabriel had the requisite intent to remain in Chicago such that he was domiciled there, and not in Puerto Rico where he had lived prior to moving to St. Kitts for school. (Docket No. 38 Ex. 1 at p. 17.)

When challenged, the burden of demonstrating diversity jurisdiction falls to the party asserting it. García Pérez v. Santaella, 364 F.3d 348. 354, 350 (1st Cir. 2004) ("Once challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence.") (citing Bank One, 964 F.2d at 50.) Here, the plaintiffs have demonstrated that Gabriel was a resident of Chicago when the complaint was filed,

satisfying the first element of domicile.  In order to demonstrate his intent to remain in Chicago, the plaintiffs have cited to the one-year lease Gabriel signed, his payment of utilities in his Chicago apartment, and the purchase of an insurance policy to cover his apartment.  (Docket No. 51 at p. 5.)  We know from his deposition, however, that Gabriel was in Chicago completing a medical rotation as part of his schooling.  (Docket No. 38 Ex. 1 at p. 16-17.)  Further, Gabriel testified that his medical rotation program sends him to hospitals across the country for relatively short periods of time, sometimes less than a year, and that he will go wherever his school sends him.  Id. at 21.

It is common knowledge that a student who moves to a new state for school, absent other conditions, does not become domiciled in the state where he is enrolled.  See Areces Coma v. Oliva de Cuebas, 356 F. Supp. 3d 198, 203 (D.P.R. 2019) (Gelpí, J.) ("There is an established principle that out-of-state college students are not domiciliaries of the state in which they go to school.") (quoting García Pérez 364 F.3d at 354).  This is because attending out of state school is typically done for a finite period of time, and does not, on its own, establish the student's intent to remain beyond graduation.  See Wright, & Miller §3619 (2024) ("[out-of-state students are] presumed to lack the intention to remain in the state indefinitely that is required for the

acquisition of a new domicile and [they] retain their prior, established domiciles while attending school.")

       In order to meet his burden and demonstrate an intent to remain in Chicago, Gabriel must provide the Court with some evidence outside of his physical presence in the state. Areces Coma 356 F. Supp. 3d at 203 (citing García Pérez, 364 F.3d at 354). A one-year lease, along with payment of utilities and rental insurance is not sufficient to satisfy this burden. Id. While courts have held that signing a one-year lease is probative of intent to remain, this evidence is typically presented in conjunction with other proof of intent such as the location of real and personal property, driver's license, bank accounts, place of employment, and transfer of phone service. García Pérez, 364 F.3d at 349; see e.g. Padilla-Mangual v. Pavía Hosp., 516 F.3d 29 (1st Cir. 2008) (examining the location of employment, paid taxes, and property in determining a party's intent to reside in a jurisdiction); Shishko v. State Farm Ins. Co., 553 F. Supp. 308, 311 (E.D. Pa. 1982) (considering a student's state driver's license and bank account alongside their lease agreement when determining domicile); Cruz-Martínez v. Hosp. Hermanos Meléndez, Inc., 475 F. Supp. 2d 140 (D.P.R. 2007) (Pérez-Giménez, J.) (taking into account a party's voting registration, location of personal and real property, and location of brokerage and bank accounts as probative

Civil No. 22-1547 (FAB)                                                10

of intent to remain). Gabriel must provide more evidence of intent
because any student conducting a medical rotation in furtherance
of his or her education would need to sign a lease for at least
one year or otherwise find housing in the city where they were
stationed.

Before moving to Chicago for his medical rotation,
Gabriel lived in St. Kitts where he attended the University of
Medicine and Health Sciences. (Docket No. 38 Ex. 1 at p. 16-17.)
Prior to that, Gabriel lived in Puerto Rico where he grew up. Id.
For the same reasons that Gabriel was not domiciled Chicago, he is
unable to claim domicile in St. Kitts, which means Gabriel was
still a citizen of, and domiciled in, Puerto Rico at the time the
complaint was filed. This Court therefore lacks subject matter
jurisdiction over plaintiffs' claims because there is a lack of
complete diversity among the parties. See BRT Mgmt. LLC v. Malden
Storage LLC, 68 F.4th 691, 695 (1st Cir. 2023) ("Under [28 U.S.C.
§1332] . . . diversity must be complete; that is, no plaintiff may
be a citizen of the same state as any defendant.")

B. **Amount in Controversy**

Because complete diversity of the parties is not
present, the Court does not have subject matter jurisdiction over
plaintiffs' claims and need not consider plaintiffs' amount in
controversy argument. Woodard v. Doe, 46 F.3d 1134 (7th Cir. 1995)

Civil No. 22-1547 (FAB)                                                    11

("the lack of diversity citizenship is fatal to federal jurisdiction.")

**IV. Conclusion**

For the above reasons, the Court **ADOPTS** the R&R (Docket No. 46), and **GRANTS** defendants' motion for summary judgment. (Docket No. 34.)  Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.  Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, October 28, 2024.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE